UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| CHAGS HEALTH INFORMATION TECHNOLOGY, LLC | § § § |
| v. | §  CIVIL NO. 4:21-CV-268-SDJ |
| RR INFORMATION TECHNOLOGIES, INC., ET AL. | § § § § |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants RR Information Technologies, Inc. and Kamalakar Vuggumudi's Motion for Recovery of Attorneys' Fees. (Dkt.#49). After considering Plaintiff's and Defendants' briefs and the applicable law, the Court concludes that Defendants' motion should be denied.

**I. BACKGROUND**

Plaintiff Chags Health Information Technology, LLC ("C-HIT") is the former employer of Defendant Kamalakar Vuggumudi. C-HIT sued Vuggumudi and RR Information Technologies, Inc.[1] in Texas state court after Vuggumudi resigned from C-HIT while C-HIT was rebidding for a contract with the Centers for Medicare and Medicaid Services ("CMS")—C-HIT's principal client. C-HIT alleged that Vuggumudi breached his contracts with C-HIT and misappropriated its confidential information and trade secrets. C-HIT believed that Vuggumudi left its employ so that he could work for a C-HIT competitor also vying for the CMS contract.

---

[1] RR Information Technologies Inc., served as C-HIT's staffing subcontractor and connected C-HIT to Vuggumudi.

1

Based on these allegations, C-HIT obtained a Temporary Restraining Order ("TRO") in state court, wherein Defendants were ordered to, inter alia, cease using or disclosing C-HIT's confidential information and trade secrets. Thereafter, Defendants removed the case to this Court. C-HIT again moved for a TRO, this time unsuccessfully. The Court denied the motion after finding that "C-HIT ha[d] not established that it ha[d] a likelihood of prevailing" on its trade secrets claim. (Dkt. #22 at 6). After the Court denied C-HIT's motion for a TRO, C-HIT filed an amended complaint, and Defendants answered and counterclaimed for attorney's fees. The parties then each moved to dismiss the other side's claims or counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). Before the Court could rule on these motions, Defendants voluntarily dismissed their counterclaims.

Approximately one week after Defendants' voluntary dismissal of their counterclaims, (Dkt. #42), C-HIT moved to dismiss its claims without prejudice pursuant to Rule 41(a)(2)—which Defendants did not oppose. (Dkt. #45). In the motion, the parties agreed that "dismissal shall not serve to limit or cut off . . . the recovery of Defendants' attorneys' fees." (Dkt. #45 at 2). However, since the motion was signed by all parties and it otherwise complied with Rule 41(a)(1)(A)(ii), the Court construed the motion as a stipulation of dismissal.

Defendants subsequently moved for attorney's fees under the Texas trade secrets statute, and the Court held a hearing on the motion. The Court now considers Defendants' motion.

## II. LEGAL STANDARD

Traditionally, under the "American Rule," "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126, 135 S.Ct. 2158, 192 L.Ed.2d 208 (2015) (citation omitted). Thus, a party seeking attorney's fees must identify the statute or contract that provides a basis for such an award. *See id.*; *see also Spear Mktg., Inc. v. BancorpSouth Bank*, 844 F.3d 464, 470 (5th Cir. 2016) ("A district court may not award attorneys' fees 'unless a statute or contract provides' the basis for such an award." (citing *Baker Botts*, 576 U.S. at 121)). "A fee award is governed by the same law that serves as the rule of decision for the substantive issues in the case." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Thus, since C-HIT brought its trade secrets claim under the Texas Uniform Trade Secrets Act ("TUTSA"), TUTSA also provides the law governing the fee award determination for that claim. *See id.*

Under TUTSA, a "court may award reasonable attorney's fees to the prevailing party if: (1) a claim of misappropriation is made in bad faith; (2) a motion to terminate an injunction is made or resisted in bad faith; or (3) willful and malicious misappropriation exists." TEX. CIV. PRAC. & REM. CODE § 134A.005. Defendants solely rely on the first basis for their claim for attorney's fees. However, since only a prevailing party can be awarded attorney's fees, the Court must determine whether

Defendants are prevailing parties under TUTSA before it can consider whether C-HIT made its claim of misappropriation in bad faith.

### III. DISCUSSION

**A. Defendants Are Not Prevailing Parties Under the General Rule.**

In general, there must be a "judicially sanctioned change in the legal relationship of the parties" before a party can be bestowed "prevailing-party" status for purposes of attorney's fees awards. *Buckhannon Bd. & Care Home, Inc. v. W.V. Dep't of Health & Human Res.*, 532 U.S. 598, 605, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). A voluntary dismissal without prejudice does not usually confer prevailing-party status, as the court issues no judgment and neither party is awarded any remedy. *See, e.g.*, *Hacienda Records, L.P. v. Ramos*, 718 F.App'x 223, 236 (5th Cir. 2018) ("[P]revailing-party status is not conferred through a party's voluntary dismissal without prejudice."); *Stockade Cos., LLC v. Kelly Rest. Grp., LLC*, No. A-17-CV-143, 2018 WL 3018177, at *5 (W.D. Tex. June 15, 2018) ("Trial courts in this Circuit . . . generally hold that a defendant is not the prevailing party where the plaintiff voluntarily dismissed the case without prejudice."); *BHL Boreseight, Inc. v. Geo-Steering Sols., Inc.*, No. 4:15-CV-627, 2017 WL 2730739, at *17 (S.D. Tex. June 26, 2017) ("[A] defendant who has the claims against him resolved by voluntary dismissal without prejudice generally is not considered a prevailing party or entitled to an award of attorney's fees."); *United States v. 2002 BMW, Model X-5*, No. H-06-0399, 2008 WL 11425684, at *4 (S.D. Tex. Mar. 31, 2008)

("A voluntary dismissal without prejudice cannot be said to have changed the legal relationship between the parties to confer prevailing party status.").

Texas courts are in accord. *See, e.g.*, *Epps v. Fowler*, 351 S.W.3d 862, 869 (Tex. 2011) ("[A] nonsuit[2] without prejudice works no . . . change in the parties' legal relationship."); *Arrow Marble, LLC v. Estate of Killion*, 441 S.W.3d 702, 707 (Tex. App—Houston [1st Dist.] 2014, no writ) ("A defendant who has the claims against him resolved by voluntary dismissal without prejudice generally is not considered a prevailing party or entitled to an award of attorney's fees."); *Cricket Commc'ns, Inc. v. Trillium Indus., Inc.*, 235 S.W.3d 298, 311 (Tex.App.—Dallas 2007, no pet.) ("A nonsuit without prejudice does not adjudicate the rights of parties but merely places them in the positions in which they would have been had suit not been brought.").

Thus, under the general prevailing-party rule, Defendants' request for attorney's fees would be dead on arrival because C-HIT voluntarily dismissed its claims *without prejudice*. Not only was C-HIT's motion unopposed, but Defendants indicated their support by signing it.[3] (Dkt. #45). Based on the legal authority provided above, such a dismissal without prejudice would generally preclude an

---

[2] "A notice of nonsuit is loosely the Texas analog to a federal notice of dismissal." *Ford v. Lindsay*, No. 3:07-CV-1286, 2008 WL 648986, at *1 n.2 (N.D. Tex. Mar. 3, 2008) (cleaned up).

[3] The legal definition of "prevailing party" as used in TUTSA—not the intent of the parties—controls. *See Groff v. DeJoy*, 600 U.S. 447, 468, 143 S.Ct. 2279, 216 L.Ed.2d 1041 (2023) ("[S]tatutory interpretation must begin with, and ultimately heed, what a statute actually says." (cleaned up)). Thus, that C-HIT's motion to dismiss its claims without prejudice ostensibly reserved Defendants' rights to seek attorney's fees has no bearing on whether Defendants may be awarded attorney's fees.

award of attorney's fees since the parties' legal relationship was not altered. *See Buckhannon Bd. & Care Home*, 532 U.S. at 605.

## B. Defendants Are Not Prevailing Parties Under the *Epps* Exception.

Defendants rely on an exception to the general prevailing-party rule to justify their request for attorney's fees. In *Epps v. Fowler*, the Texas Supreme Court held that "a defendant may be a prevailing party when a plaintiff nonsuits without prejudice if the trial court determines, on the defendant's motion, that the nonsuit was taken to avoid an unfavorable ruling on the merits." 351 S.W.3d at 870. While recognizing that, generally, a "nonsuit without prejudice works no . . . change in the parties' legal relationship," the Court noted its "disfavor" "toward nonsuits that are filed to circumvent unfavorable legal restrictions or rulings." *Id.* at 869–70. Thus, if the party seeking attorney's fees can show that the other party nonsuited or voluntarily dismissed its case to avoid an unfavorable ruling that would work a change in the parties' relationship, he may still be entitled to attorney's fees notwithstanding the fact that the nonsuit or voluntary dismissal did not change the parties' legal relationship. *See id.*

When determining whether a nonsuit was taken to avoid an unfavorable ruling, a court "should rely as far as possible on the existing records and affidavits, and resort to live testimony only in rare instances."[4] *Id.* at 870. The *Epps* Court indicated that the following non-exhaustive factors could support a finding that a

---

[4] This case does not present a "rare instance" that would warrant reliance upon live testimony. Therefore, in accordance with *Epps*, the Court declines to consider the testimony from the oral hearing.

6

party nonsuited to avoid an unfavorable ruling: (1) the timing of the plaintiff's nonsuit when filed after the defendant files a potentially dispositive motion; (2) the plaintiff's unexcused failure to respond to requests for admission or other discovery that could support entry of an adverse judgment; (3) the plaintiff's failure to timely identify experts or other critical witnesses; and (4) the existence of other procedural obstacles, such as the plaintiff's inability to join necessary parties. *Id.* at 871.

The *Epps* Court also identified indicators that a party did not dismiss his claims to avoid an unfavorable ruling. For example, a plaintiff who nonsuits only after "discovery reveals previously unknown flaws in [his] claims" likely has not done so to avoid an unfavorable ruling on the merits. *Id.* at 871. Rather, that decision "may well reflect a legitimate litigation strategy that 'reveals nothing about the merits of [his] case [and thus] does not warrant a conclusion that a defendant in such a case has prevailed.'" *See id.* at 868 (quoting *Dean v. Riser*, 240 F.3d 505, 510 (5th Cir. 2001)). The *Epps* Court further noted that "evidence that the suit was not without merit when filed may indicate that the defendant has not prevailed and is therefore not entitled to attorney's fees." *Id.* at 871.

### i. Defendants have not shown that there was a pending motion that would have changed the parties' legal relationship.

In order for C-HIT to have voluntarily dismissed its claims "to avoid an unfavorable ruling on the merits," there must have been a pending ruling on the merits to avoid. Defendants have failed to show that there was one. True, Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim was pending at that time. But it is unclear whether the resolution of this motion would have been "on the

7

merits." *Compare Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 582 (5th Cir. 2020) (citation omitted) ("A motion to dismiss for failure to state a claim concerns the 'formal sufficiency of the statement of the claim for relief,' not a lawsuit's merits."); *Gallentine v. Hous. Auth. of Port Arthur*, 919 F.Supp.2d 787, 794 (E.D. Tex. 2013) (noting that the motion "is not a procedure for resolving contests about the facts or the merits of a case." (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure: Civil* 2d § 1356, at 294 (1990))), *with Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'" (citations omitted))[5]; *In re Mirant Corp.*, 613 F.3d 584, 589 (5th Cir. 2010) ("[A] dismissal with prejudice for failure to state a claim is a decision on the merits and essentially ends the plaintiff's lawsuit." (quotation omitted)); *Dean*, 240 F.3d at 509 ("The dismissal [with prejudice] is tantamount to a judgment on the merits.").

Regardless of how the motion is characterized, the concern in *Epps*—and the federal precedent the Court cited—was whether a dismissal or other action was *with* or *without* prejudice. *Epps*, 351 S.W.3d at 870 (contrasting the legal effects of a

---

[5] *Federated Department Stores*, while a Supreme Court case, is not dispositive here. First, the statement cited here is dictum and is thus not controlling. *See Knight v. Kirby Offshore Marine Pac., L.L.C.*, 983 F.3d 172, 177 (5th Cir. 2020) (explaining that dictum is "not binding precedent"). Second, the Court made this point to emphasize that the dismissal at issue had claim preclusive effects—a principle that this Court discusses and upholds *infra*. *See Federated Dep't Stores*, 452 U.S. at 399. Third, as discussed below, the *Epps* Court was primarily concerned with whether the nonsuit works a "permanent, inalterable change in the parties' legal relationship." *Epps*, 351 S.W.3d at 868–69. A 12(b)(6) dismissal—even if characterized as being "on the merits"—may or may not work such change.

nonsuit *with* prejudice with the legal effects of a nonsuit *without* prejudice); *Dean*, 240 F.3d at 509 ("[A] dismissal with prejudice gives the defendant the full relief to which he is legally entitled and is tantamount to a judgment on the merits." (quotation omitted)). This makes sense because, as explained above, the underlying concern is whether there has been a "change in the parties' legal relationship." *Epps*, 351 S.W.3d at 868–69. Legal preclusion from suit certainly constitutes a change in the parties' legal relationship. *Id.* ("The res judicata effect of a nonsuit with prejudice works a permanent, inalterable change in the parties' legal relationship to the defendant's benefit: the defendant can never again be sued by the plaintiff or its privies for claims arising out of the same subject matter.").

Thus, the question the Court must answer is whether Defendants' Rule 12(b)(6) motion to dismiss necessarily would have worked a judicially sanctioned change in the parties' relationship—i.e., whether the motion, if granted, would have prejudiced C-HIT's future refiling of its claims. The Court cannot answer this question in the affirmative, and thus it finds that Defendants have failed to meet their burden.

"Dismissal under rule 12(b)(6) . . . is typically"—but not always—"with prejudice, meaning the plaintiff is precluded from bringing the same claims again." *Williams v. Am. Com. Lines, Inc.*, No. 21-30609, 2022 WL 1652778, at *1 (5th Cir. May 24, 2022) (per curiam); *see also Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 n.8 (5th Cir. 1993) ("[A] dismissal is presumed to be with prejudice unless the order explicitly states otherwise."). At the same time, however, courts "should

9

allow a plaintiff to amend his complaint 'when justice so requires.'" *Mandawala v. Ne. Baptist Hosp.*, 16 F.4th 1144, 1155 (5th Cir. 2021) (quoting FED. R. CIV. P. 15(a)(2)). In its response and sur-reply to Defendants' motion to dismiss, C-HIT requested an opportunity to amend its complaint "to cure any deficiencies" should the Court have granted Defendants' motion. (Dkt. #33, #39). And although Defendants requested dismissal with prejudice, had the Defendants' motion been granted, it would have been well within the Court's discretion to dismiss *without prejudice* so that C-HIT could amend its pleadings. *See Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368, 378 (5th Cir. 2014) ("The district court is entrusted with the discretion to grant or deny a motion to amend and may consider a variety of factors."). In this regard, it's worth noting that Defendants' motion did not turn on the typical assertions associated with futility of amendment, such as a motion arguing that plaintiff's claims are barred as a matter of law or where the Court lacks subject-matter jurisdiction. Instead, Defendants' motion turned on a lack of plausible allegations supporting the claims made by C-HIT. This is the type of circumstance in which this Court generally allows a plaintiff at least one opportunity to amend a deficient complaint, rather than dismissing with prejudice. *See, e.g.*, *SQWIN SA v. Walmart, Inc.*, No. 4:22-CV-1040, 2023 WL 4236896, at *3 (E.D. Tex. June 28, 2023) (dismissing claims for lack of a "factual basis" but allowing plaintiff "the opportunity to replead"); *EEOC v. AOD Ventures, Inc.*, No. 4:21-CV-418, 2022 WL 4367199, at *6 (E.D. Tex. Mar. 31, 2022) (dismissing without prejudice a hostile work environment claim for lack of plausible allegations but granting plaintiff leave to amend its complaint).

Given this procedural posture, granting Defendants' attorney's-fee request would require the Court to stack inference upon inference in favor of Defendants: first that Defendants' Rule 12(b)(6) motion likely would have been granted and second that C-HIT *also* likely would not have been permitted to amend its complaint. That's quite a stretch. The fact is that the Court might well have denied Defendants' motion or granted it only in part and allowed C-HIT to amend its complaint. The Court cannot award attorney's fees based on the uncertain, conjectural foundation suggested by Defendants.

In sum, Defendants have failed to show that there was a pending motion that certainly, or even likely, would have led to an "unfavorable ruling on the merits" that would have worked a judicially sanctioned change in the parties' relationship—and that C-HIT voluntarily dismissed its claims to avoid a ruling on that motion. *See Epps*, 351 S.W.3d at 870. Thus, Defendants have failed to meet their burden to show that they are prevailing parties.[6]

### ii. The timing of C-HIT's voluntary dismissal does not indicate that it was trying to avoid an unfavorable ruling.

Even if Defendants' motion to dismiss would have worked a legal change in the parties' relationship, the *Epps* factors do not support a finding that C-HIT only

---

[6] Defendants make an additional argument that their motion to dismiss—which the Court never considered because both sides voluntarily dismissed their claims—should now be construed, post hoc, as a motion for judgment on the pleadings or a motion for summary judgment. But the Court cannot stack even more inferences about how Defendants' dismissal motion *might* have been construed, if both sides had not dropped their claims against each other, nor will it indulge Defendants' after-the-fact characterization of their motion as effectively a summary-judgment filing. Of course, Defendants could have filed a summary-judgment motion. They didn't.

11

voluntarily dismissed its claims to avoid an unfavorable ruling on the motion. The Court in *Epps* suggested that courts look to the "course of events in the lawsuit," such as whether a "plaintiff's nonsuit has followed closely on the heels of a defendant's potentially dispositive motion." *Epps*, 351 S.W.3d at 870. However, even after considering the "course of events in the lawsuit," the Court is unpersuaded that the *Epps* exception applies here.

This case was removed from Texas state court to this Court in April of 2021. Shortly after removal, the Court held a hearing on C-HIT's motion for a TRO, which the Court ultimately denied on May 7, 2021. (Dkt. #22). Typical motions practice ensued, with Defendants moving to dismiss C-HIT's claims on May 28, 2021, (Dkt. #31), and C-HIT moving to dismiss Defendants' counterclaims on July 2, 2021, (Dkt. #37). Thereafter, the Court officially noticed Defendants' voluntary dismissal of their counterclaims on July 20, 2021. (Dkt. #43). Two days later, C-HIT moved to voluntarily dismiss its claims, (Dkt. #45), and the Court entered the dismissal on July 26, 2021, (Dkt. #46).

Defendants argue that this timeline demonstrates that C-HIT voluntarily dismissed its claims to avoid the Court's ruling on Defendants' motion to dismiss. Essentially, Defendants claim that, by waiting several months before dismissing its

12

claims and then only doing so in the face of a motion to dismiss, C-HIT must have only dismissed its claims to avoid an unfavorable ruling. The Court is not persuaded.

C-HIT moved to voluntarily dismiss its claims fifty-five days[7] after Defendants moved to dismiss—after filing both a response and a sur-reply to the motion to dismiss. In contrast, the cases cited in *Epps* involved plaintiffs who moved to dismiss almost immediately after defendants filed a dispositive motion on the merits. *See Fox v. Vice*, No. 2:06-CV-135, 2008 WL 4386880, at \*3, \*6 (W.D. La. Sept. 22, 2008) (indicating that the plaintiff voluntarily dismissed his claim in his response to the defendants' motion for summary judgment); *Butler v. MBNA Tech., Inc.*, No. 3:02-CV-1715, 2004 WL 389101, at \*5 (N.D. Tex. Mar. 1, 2004) (noting that the plaintiff stipulated to the dismissal of her claims "in her response to [the defendant's] motion for summary judgment"); *Barnes v. Sanchez*, No. 3:07-CV-01184, 2011 WL 1831602, at \*1–2 (N.D. Tex. May 10, 2011) (noting that the plaintiff dismissed his claims against a defendant after trial had begun and after the defendant had moved for judgment as a matter of law, but before the court charged the jury); *see also Hilborn v. Klein Indep. Sch. Dist.*, No. H-09-840, 2010 WL 1463472, at \*3 n.2 (S.D. Tex. Apr. 12, 2010) (noting that, allegedly, the plaintiff voluntarily dismissed his claims merely five days after the defendants informed him that they intended to pursue attorney's fees and file a motion to dismiss).[8] Thus, the Court finds that C-HIT's motion did not

---

[7] Defendants claim that C-HIT moved to voluntarily dismiss its claims "less than 30 days from the Rule 12(b)(6) Motion." (Dkt. #80 at 8). The Court is unsure of how Defendants calculated this number.

[8] The *Epps* Court appears to have misunderstood the timeline in *Hilborn*. The Court stated that the "plaintiff sought dismissal only after the defendants presented uncontested affidavits establishing that the plaintiff had no viable First Amendment claim." *Epps*, 351

come "closely on the heels" of Defendants' motion to dismiss, such that the Court should find that it only dismissed its claims to avoid an unfavorable ruling. *See Epps*, 351 S.W.3d at 870.

### iii. C-HIT's suit was not without merit when filed.

Defendants further allege that C-HIT's suit was without merit from the start, and thus C-HIT only dismissed its claims to avoid a reckoning with that fact. Defendants' argument is grounded in the counterfactual to the statement in *Epps* that "evidence that the suit was not without merit when filed may indicate that the defendant has not prevailed and is therefore not entitled to attorney's fees." *Epps*, 351 S.W.3d at 871. Defendants rely on the facts that (1) the Court denied C-HIT's motion for a TRO and (2) C-HIT's corporate representative, Manoj Chaganti, testified that in July of 2021—the same month C-HIT voluntarily dismissed its claims—he was "concerned" that the Court would not rule in C-HIT's favor. Again, the Court is unpersuaded.

In its order denying C-HIT's motion for a TRO, the Court noted that "C-HIT has pointed to scant evidence that either [Defendant] is in possession of or disclosing any confidential information or trade secrets." (Dkt. #22 at 5). The Court found that "C-HIT ha[d] not established that it ha[d] a likelihood of prevailing on [its] claims." (Dkt. #22 at 6). But the fact that the Court denied C-HIT's motion for a TRO does not

---

S.W.3d at 870 (citing *Hilborn*, 2010 WL 1463472, at *3)). However, the affidavits at issue were filed along with the defendants' motion for attorney's fees, which was filed after the plaintiff voluntarily dismissed his case. *Hilborn*, 2010 WL 1463472, at *3 & n.2. Further, there was no pending dispositive motion. Thus, *Hilborn* is mostly inapposite to the position for which the *Epps* Court cited it.

14

necessarily mean that the Court would have granted Defendants' motion to dismiss—and it certainly does not mean that the suit was without merit when filed. *See Stockade*, 2018 WL 3018177, at *5 (collecting cases). A temporary restraining order, like a preliminary injunction, is "'an extraordinary and drastic remedy,' and should only be granted when the movant has clearly carried the burden of persuasion." *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (citation omitted). To be successful, a movant must establish "a substantial likelihood" that he "will prevail on the merits." *Id.* In contrast, "a party may defeat a motion to dismiss without demonstrating a substantial likelihood of success on the merits." *Stockade*, 2018 WL 3018177, at *5 (citation omitted). Thus, the Court's denial of C-HIT's motion for a TRO does not mean that C-HIT's claims were "without merit when filed," only that they did not meet the high TRO standard.

Defendants also point to Chaganti's testimony that he was "concerned" that the Court would rule against C-HIT. But this concern does not establish that C-HIT filed a meritless claim. While the Court declines to decide or comment on whether C-HIT would have succeeded had the case proceeded, it will note that C-HIT obtained a TRO in state court and that C-HIT has provided evidence that it legitimately believed that Vuggumudi had potentially stolen its trade secrets. However, no discovery took place, so C-HIT's allegations remain unverified. Nonetheless, Chaganti's testimony is insufficient to establish that C-HIT's claims were "without

15

merit when filed," especially in light of the record evidence that C-HIT was legitimately concerned that Vuggumudi had stolen its trade secrets.[9]

### iv. The remaining Epps factors do not favor Defendants.

The *Epps* Court identified additional indicia that a party dismissed its claims to avoid an unfavorable ruling, but none are found here. C-HIT did not "fail[] to respond to requests for admissions or other discovery that could support entry of an adverse judgment." *See Epps*, 351 S.W.3d at 871. Nor did it "fail[] to timely identify experts or other critical witnesses." *See id.* And the Court is not aware of any "other procedural obstacles" that might have motivated C-HIT to dismiss its claim. *See id.* Thus, these factors do not support an inference that C-HIT dismissed its claims to avoid an unfavorable ruling.

\*   \*   \*

Generally, prevailing-party status is not bestowed upon the beneficiary of a voluntary dismissal without prejudice. *See Hacienda Records*, 718 F.App'x at 236; *Arrow Marble*, 441 S.W.3d at 707. A defendant can overcome this rule if it can show that the plaintiff voluntarily dismissed his claim "to avoid an unfavorable ruling on the merits" that would have worked a legal change in the parties' relationship. *Epps*, 351 S.W.3d at 870. Defendants have failed to show that this exception applies here, as it is unclear whether a ruling on their motion to dismiss would have worked a legal

---

[9] C-HIT asserts that it voluntarily dismissed its claims because "the factual situation had changed." (Dkt. #56 at 4). Specifically, it states that the "government awarded the [CMS] contract to a different company, and C-HIT protested that decision." (Dkt. #79 at 9). The Court need not consider the veracity of this assertion, as it finds that Defendants have not shown that the suit was without merit when filed.

change in their relationship. Further, after considering the factors enumerated in *Epps*, along with unenumerated but relevant factors, the Court is unconvinced that C-HIT voluntarily dismissed its claims to avoid such an outcome. Therefore, Defendants are not entitled to attorney's fees because they are not prevailing parties under TUTSA.

## C.  C-HIT Did Not Bring Its TUTSA Claim in Bad Faith.

Even if Defendants were prevailing parties under TUTSA, they still would not be entitled to attorney's fees because they failed to show that C-HIT brought its misappropriation claim in bad faith. *See* TEX. CIV. PRAC. & REM. CODE § 134A.005(1) ("The court may award reasonable attorney's fees to the prevailing party if [] a claim of misappropriation is made in bad faith."). The term "bad faith" is undefined, and the Texas Supreme Court has yet to shed light on what constitutes bad faith under TUTSA. In the absence of guidance from the Texas legislature or the Texas Supreme Court, courts in this circuit generally rely on a two-part test to analyze whether a claim was brought in bad faith: (1) whether the claim was entirely baseless or objectively specious and (2) whether the claim was made or pursued in subjective bad faith or for an improper purpose. *See CAE Integrated, LLC v. Moov Techs. Inc.*, No. 1:21-CV-377, 2023 WL 3959397, at *3 (W.D. Tex. June 12, 2023); *Vita Int'l, Inc. v. Foro Energy, Inc.*, No. 4:18-CV-01663, 2022 WL 350195, at *19 (S.D. Tex. Jan. 4, 2022); *Stockade*, 2018 WL 3018177, at *6.

Defendants argue that C-HIT intentionally filed a misappropriation claim that it knew was unmeritorious for the "improper purpose of harassing [Vuggumudi], exacting vengeance upon him for refusing to assist C-HIT in competing for the [CMS

17

contract], damaging his reputation, and breaking his will with exorbitant litigation costs." (Dkt. #49 at 9). This behavior, Defendants contend, constitutes bad faith such that they should be awarded attorney's fees. The Court disagrees.

Defendants' assertion that C-HIT's claim was unmeritorious—and thus brought in bad faith—is primarily grounded in C-HIT's failure to provide sufficient evidence to be awarded a TRO. But losing on a TRO motion does not equate to bad faith, and the record does not otherwise demonstrate that C-HIT brought its claim in bad faith. Therefore, the Court holds that Defendants would not be entitled to attorney's fees under TUTSA even if they could be considered prevailing parties.

## IV. CONCLUSION

As explained above, Defendants are not prevailing parties under TUTSA. And even if they were, they have failed to show that C-HIT brought its misappropriation claim in bad faith. Accordingly, Defendants' Motion for Recovery of Attorneys' Fees, (Dkt. #49), is **DENIED**.

**So ORDERED and SIGNED this 9th day of November, 2023.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE